No. 47,149

JANET S. WALLACE, *Appellee*, v. DONALD L. WALLACE, *Appellant.*

(520 P. 2d 1221)

Opinion filed April 6, 1974.

*J. Stephen Nyswonger*, of Braun & Nyswonger, of Garden City, argued the cause, and *Lelyn L. Braun*, of the same firm, was with him on the brief for the appellant.

*R. R. Mitchell*, of Mitchell, Smith & Patton, of Dodge City, argued the cause, and *Don C. Smith*, of the same firm, was on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This action involves post-trial motions and orders in a divorce action relative to the effect of the wife's remarriage on an alimony award. The husband appeals from a *nunc pro tunc* order made by the trial court changing an alimony judgment to a property division judgment.

The plaintiff, Janet S. Wallace, and the defendant, Donald L. Wallace, were married in 1964 and subsequently had one child. They lived together as husband and wife until 1969 when the wife filed an action for divorce. A divorce was granted the wife in January, 1970, and she recovered an award of alimony in the sum of

$7,500 payable over a ten-year period. Other appropriate provisions were made as to custody, child support, and division of property. In December, 1970, the wife remarried. In July, 1971, the husband filed a motion to terminate alimony. Thereupon, the wife filed a motion for a *nunc pro tunc* order to set aside the award of alimony and change the same to a division of property. In December, 1971, the court changed by *nunc pro tunc* order the $7,500 judgment for alimony to reflect a division of property in the same amount. The only evidence before the court was in the form of a stipulation, the pertinent provisions of which read:

"The parties and their attorneys prior to appearing before the Court entered into settlement conferences and endeavored to arrive at a fair settlement of their jointly accumulated property. That they were able to agree that the equity in the house and the business would go to the defendant. That the 1967 Mustang automobile would go to the plaintiff, and the defendant would pay a repair bill upon the same, and that the defendant would repay to the plaintiff the sum of $565.35 so that plaintiff could repay that amount to the Kansas State Teachers Retirement Fund since she would be actively reengaging employment as a teacher. That the point upon which the parties could not arrive at an agreement was the sum of money which should be paid from the defendant to the plaintiff to compensate the plaintiff for the property which was going to the defendant and also that the parties were unable to agree upon the exact amount of support money to be paid.

"That the case was then tried to the Court. That in the presentation to the Court it was suggested by the attorneys that any cash award made from the defendant to the plaintiff should be denominated alimony since this would result in a tax advantage for the defendant and since it was contemplated that he would have the higher income would, taking the parties as a whole, result in a net tax saving. That after hearing the evidence the Court divided the property in accordance with the agreements that the parties had arrived at and made an award of $7500.00 denominated alimony. That this award was made payable over a ten year period in order to make sure that the Federal tax advantages would accrue and that later because of a technical error in the phrasing of that award and on the 9th day of October, 1970, a nunc pro tunc order was made which provided that the $7500.00 alimony would be paid over a period in excess of ten years.

"That the actual fact is that the $7500.00 which was denominated as alimony was actually a property settlement payment to be made to even up the division of the property."

On appeal, the husband argues the trial court did not have jurisdiction to change the previous judgment, citing *Herzmark v. Herzmark*, 199 Kan. 48, 427 P. 2d 465; *Flannery v. Flannery*, 203 Kan. 239, 452 P. 2d 846; *Beck v. Beck*, 208 Kan. 148, 490 P. 2d 628; and *Drummond v. Drummond*, 209 Kan. 86, 495 P. 2d 994.

The wife contends since the parties agreed the $7,500 was ac-

tually a division of property the trial court had the right by *nunc pro tunc* order to correctly reflect what the parties agreed to in the first instance.

The answer to the question presented in this appeal centers around a proper construction of K. S. A. 1973 Supp. 60-1610 (*b*) and (*c*). With relation to this issue, we first considered the statute in *Herzmark*. There, a judgment was entered divorcing the parties and, in addition to other provisions, an alimony award was made in favor of the wife. Subsequently, the wife remarried and the husband filed a motion to set aside the unpaid portion of the alimony judgment. We held that remarriage of a recipient of alimony does not of itself operate to release the obligation to pay alimony, but proof of remarriage on motion to modify makes out a prima facie case requiring termination of future alimony payments. In reaching this conclusion we stated care should be exercised in an original decree of divorce that payments to equalize the division of property are not included with payments for future support denominated as alimony.

In *Flannery*, the wife moved to modify an order for division of property. We stated an alimony judgment may be modified subject to the limitations set out in the statute, but no comparable authority is granted with respect to a division of property. We construed the omission as a deliberate legislative design to withhold from a trial court the power to modify its original decree as to property rights or division of property.

In *Beck*, the husband appealed from an order on a post-divorce motion to discontinue alimony. The trial court reduced the alimony from $7,500 to $5,000 upon proof of the wife's remarriage. In its decision the trial court took the position that the award of $7,500 was in the nature of a property settlement. We noted that the record disclosed at the time the divorce was granted both court and counsel regarded the sum as alimony. In setting aside the alimony judgment we repeated the admonition in *Herzmark* as to the necessity of recognizing the distinction between alimony and a division of property.

In *Drummond*, the parties entered into a settlement agreement which provided for a division of property and alimony. The agreement was submitted to the trial court and it was approved and made the judgment of the court. Subsequently, the wife remarried and moved to have the alimony award changed to a division of

property. We held that the wife's motion to modify, although aimed at the award of alimony, had the effect of changing the division of property which was prohibited by our decision in *Flannery*. Counsel for the husband admitted the alimony award was not for future support, but was a means of equalizing the division of property. We held that the written settlement agreement was binding on the parties and the judgment for alimony should be terminated. We recognized that many factors may be considered in negotiating a divorce settlement, one of which is the matter of taxes. We also pointed out that a party to a divorce case has a right to negotiate for a higher award for alimony in lieu of a lesser amount by way of a division of property. We also stated that a party having reached such an agreement cannot attack the judgment based thereon after submitting the agreement to the court requesting its approval. We again reiterated the caveat in *Herzmark* and *Beck*, stating:

". . . We cannot dictate the provisions of a separation agreement, but court and counsel should be cautious and careful that the parties understand the legal consequences of their acts. The distinction between division of property and alimony should be clearly explained in accordance with the statutes of this state and the decisions of this court." (p. 92.)

Although we have considered variances in the facts in the instant case from those in *Drummond*, we have failed to discover any basis for denying application of the law set forth in *Drummond*. The plaintiff wife points out the agreement in this case was oral while the agreement in *Drummond* was written. We give this no significance when in each instance the parties agreed the amount to be paid to the wife should be designated as alimony. In *Drummond*, the alimony judgment was entered as a result of asking the court to approve the written agreement, while in the instant case it was done by oral request before the court. An oral request by the parties that a judgment be entered in a certain manner remains subject to the exercise of judicial discretion. When discretion is exercised by the court in the manner requested by the parties, they should not be permitted to attack the judgment and urge a result contrary to their request.

The defendant husband also claims the *nunc pro tunc* order was erroneously issued. This question was not presented in any of the cases previously cited herein. If the trial court had the right and power to issue the *nunc pro tunc* order the foregoing result is incorrect.

Both parties rely on *Mathey v. Mathey,* 175 Kan. 446, 264 P. 2d 1058. In this case the court granted a divorce to the plaintiff and in the journal entry awarded certain real and personal property to each of the parties without designating whether the award to plaintiff constituted a division of property or alimony. Subsequently, by *nunc pro tunc* order, the court corrected the journal entry to show the excess awarded the wife was actually permanent alimony. In sustaining the order on appeal we stated the following rules relating to *nunc pro tunc* orders:

"A journal entry purports to be a record of the judgment rendered but it is not necessarily the judgment actually rendered. (*Tincknell v. Tincknell,* 141 Kan. 873, 44 P. 2d 212; *Perkins v. Ashmore,* 144 Kan. 540, 61 P. 2d 888; *Victory Life Ins. Co. v. Freeman,* 145 Kan. 296, 299, 65 P. 2d 559; *Bush v. Bush,* 158 Kan. 760, 150 P. 2d 168; *Hinshaw v. Hinshaw,* 166 Kan. 481, 486, 203 P. 2d 201.)

"In the Tincknell case it was held:

" 'The proceedings considered in an action for divorce and alimony, in which the record disclosed a money judgment against plaintiff and in favor of defendant for $800, and *held,* the court was authorized to correct the record to show the judgment for $800 *was for permanent alimony.'* (Syl. ¶ 1.) (Italics supplied.)

"If the journal entry fails to accurately reflect the judgment actually rendered it is the duty of the court to make it speak the truth [citations omitted] and that may be done after the term in which the judgment is rendered [citations omitted] even though it be fifty-five years thereafter. . . .

". . . Briefly stated, the purpose of a *nunc pro tunc* order is not to change or alter an order or judgment actually made. In other words its function is not to make an order now for then, but to enter now for then an order previously made. . . ." (pp. 450, 451.)

In *Cazzell v. Cazzell,* 133 Kan. 766, 3 P. 2d 479, it was said:

"Where matters which are an essential part of a judgment are inadvertently omitted from its written text, with the effect that it does not fairly recite what the court intended, and perverts that intention, the omitted matter may be supplied and the journal entry of judgment corrected even after the close of the term, at the instance of an interested party." (Syl. ¶ 2.)

Application of these rules was affirmed in the following cases (*Ramsey v. Hand,* 185 Kan. 350, 343 P. 2d 225; *Aeby v. State,* 199 Kan. 123, 427 P. 2d 453; *Hoard v. Shelton,* 201 Kan. 145, 439 P. 2d 123; and *Norcross v. Pickrell Drilling Co.,* 202 Kan. 524, 449 P. 2d 569.)

The purpose of a *nunc pro tunc* order is to provide a means of entering the actual judgment of the trial court which for one

reason or another was not properly recorded. The right to make the order is based on the failure to accurately record the court's decision. In the instant case, both of the parties requested in open court that the payment of $7,500 to the wife be awarded as alimony. In compliance with this request the trial court signed a journal entry to this effect. Undoubtedly, the court knew the amount of the award was to equalize the property awarded the husband. Notwithstanding this knowledge, there can be no valid argument that it was not the court's intention to make the award alimony as requested by the parties. This is in accord with the test of clerical error versus judicial error set forth in 46 Am. Jur. 2d, Judgments, §§ 201 and 202. It is stated:

"The general rule is that an amendment of the record of a judgment, and a nunc pro tunc entry thereof, may not be made to correct a judicial error involving the merits, or to enlarge the judgment as originally rendered, or to supply a judicial omission or an affirmative action which should have been, but was not, taken by the court, or to show that the court might or should have decided, or intended to decide, as distinguished from which it actually did decide. The power of the court in this regard is to make the journal entry speak the truth by correcting clerical errors and omissions, and it does not extend beyond such function. . . ." (§ 201, pp. 443, 444.)

"It is often difficult to distinguish between a clerical error in the record of a judgment subject to correction by an entry nunc pro tunc, and a judicial error not subject to such correction. Generally, the distinction is not regarded as dependent upon the source of the error. The important question is not who made the error, but whether the error was made in rendering the judgment, or in recording the judgment rendered. . . ." (§ 202, p. 445.)

The trial court in entering the *nunc pro tunc* order was not correcting a clerical error. Any attempt by a court, under the guise of correcting clerical error to revise its deliberately exercised judicial discretion, is not permitted.

The stipulation filed by the parties by its terms constituted all the evidence before the trial court on defendant's motion to modify and on plaintiff's motion for an order *nunc pro tunc*. In accord with the foregoing the motion for an order *nunc pro tunc* should have been denied and the motion to modify should have been sustained. We are reversing the case with directions to sustain the motion to modify.

Reversed with directions.